UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-20104-CR-MARTINEZ

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

WALTER VEINTEMILLA.

    Defendant.
_____/

**DEFENDANT'S MOTION TO REVOKE PRETRIAL DETENTION ORDER [D.E. 145]
AND INCORPORATED MEMORANDUM OF LAW**

Comes now, the Defendant, WALTER VEINTEMILLA ("Mr. Veintemilla") by and through the undersigned counsel, and pursuant to 18 U.S.C. § 3145(b), respectfully moves this Honorable Court for an Order revoking the Pretrial Detention Order, issued herein on February 28, 2023 (D.E. 145), and as grounds therefore states as follows:

### I. Introduction

Walter Veintemilla was arrested on February 14, 2023 and stands charged by Indictment with one count of conspiracy to kill and kidnap a person outside of the United States, in violation of 18 U.S.C. § 956(a)(1); one count of conspiracy to provide material support and resources to carry out a violation of § 956(a)(1) resulting in death, in violation of 18 U.S.C. § 2339A(a); and one count of providing material support and resources to carry out a violation resulting in death, in violation of 18 U.S.C. § 2339A(a). Mr. Veintemilla was denied bond at the conclusion of his bond hearing held before Magistrate Louis on February 17, 2023. Her Order was entered on February 28, 2023.

#### A. The Detention Hearing

##### 1. Background

As established at Mr. Veintemilla's detention hearing, Mr. Veintemilla's arrest came over a year and a half after the July 7, 2021 assassination of Haitian President Jovenel Moïse ("Moïse").

During that time, Mr. Veintemilla has remained at his home in South Florida with his family, maintaining on-going communications with the government. Indeed, immediately following Moïse's death in Haiti, Mr. Veintemilla voluntarily spoke with the government regarding his knowledge of the events leading up to the assassination. He also voluntarily gave agents his telephone so that they could review his communications with his now alleged co-conspirators. (Tr. p. 81).

For the past year and a half, Mr. Veintemilla has been fully aware that the government was investigating his involvement in the events leading up to the assassination, and he has cooperated fully. At the onset, Mr. Veintemilla immediately hired attorneys to facilitate communication with the government. During that time, Mr. Veintemilla made no attempt to travel or leave the United States, has maintained his residence in Weston, Florida and has not transferred any assets.[1] Further, Mr. Veintemilla has offered to voluntarily self-surrender on multiple occasions if the government decided to charge him with any crime(s) related to the assassination of Moïse, offering to do so after each time that he learned of other peoples' arrests in the matter. (Tr. P. 196). Importantly, Mr. Veintemilla has never sought to obtain new travel documents after his were seized by law enforcement during the execution of a search warrant on his home, during which he was fully compliant.[2]

When Mr. Veintemilla was ultimately arrested at his home, Special Agent Carsten described his demeanor and conduct as, "Calm, polite, and professional." (Tr. p. 125). There is no allegation that Mr. Veintemilla has ever attempted to obstruct justice or do anything to undermine the government's investigation. Indeed, Mr. Veintemilla has demonstrated his commitment to defending himself against the government's allegations and to obey all conditions placed upon him by the Court.

Mr. Veintemilla is the father of three girls. Daniella, the youngest, is severely disabled by Cerebral Palsy, which has rendered her wheelchair bound and non-verbal. Daniella also suffers from

---

[1] *See*, Tr. p. 58.
[2] All of this was established at Mr. Veintemilla's Detention hearing, *See* Tr. pp. 55-57, 161-162.

2

Epilepsy. Mr. Veintemilla's former wife, and the mother of his three girls passed away years ago. Though he has remarried, Mr. Veintemilla is still the primary caretaker for Daniella. Daniella requires 24-hour care as she is unable to care for herself. She needs help performing all essential self-care tasks, including using the bathroom, eating, and washing. Mr. Veintemilla has taken on these responsibilities without the assistance of aids throughout Daniella's life.[3] Mr. Veintemilla's older two daughters, now 18 and 22, still reside with him as well. They are a very close and loving family.

All of Mr. Veintemilla's assets, including his home, are in the United States. Mr. Veintemilla was born in Ecuador, but he moved to the United States as a small child and is a United States Citizen. His entire family, other than his father and one sister, reside here in the United States. Though Mr. Veintemilla has been involved thorough his work in supporting public works projects and humanitarian efforts in other countries, he has not travelled outside of this country since 2016, and even then, his prior travel was very limited. (Tr. p. 59).

Mr. Veintemilla also has no criminal history. (*See* Probation Report and TR. pp. 58-59). He has never been involved in politics, nor does he have any history of political involvement in Haiti or elsewhere. Mr. Veintemilla has never even travelled to Haiti.

2. **The Allegations**

To summarize the Government's allegations, as enunciated at the detention hearing held herein on February 17, 2023 and in the Indictment filed herein, Mr. Veintemilla allegedly participated in an evolving single conspiracy whose goal was to replace Moïse, a known violent dictator, with a democratic government which was originally to be led by Pastor and Co-Defendant, Christian Sanon ("Sanon"). The government alleges that the plan originally sought regime change through lawful popular demonstrations (Tr. pp. 60-62), but later evolved into a kidnapping plot that relied upon an illegitimate arrest warrant issued by a Haitian Supreme Court

---

[3] Please see letters from Daniella's physicians and Declaration of Mr. Veintemilla's current wife, Ana Maria Fierro, attached hereto as Composite Exhibit "A".

3

Justice, and ultimately evolved into a violent coup resulting in Moïse's death. Mr. Veintemilla is alleged to have participated in the conspiracy by providing a line of credit to support these efforts.

Testimony and documents adduced at the detention hearing demonstrate that Mr. Veintemilla was approached by the principals of "CTU", a security company based in Florida, and Sanon to fund a security detail for Sanon when he travelled to Haiti to stir a public demonstration against Moïse, forcing him to step-down and be replaced by a democratic government that Pastor Sanon hoped to lead. CTU's principals represented that the United States government sanctioned that operational plan. (Tr. p. 67). A line of credit was accordingly extended to CTU and Sanon on April 30, 2021, by investors obtained by Mr. Veintemilla based on that plan (Tr. p. 65).

In his testimony, FBI Special Agent Ferlazzo admitted that there was a concern that Sanon might be arrested for agitating for a democratic government and regime change (Tr. pp.62-63). The only equipment and weapons discussed by Mr. Veintemilla on texts cited by the government were bullet proof vests, "nails" and "screws" (bullets and guns), which Agent Ferlazzo admitted would be included in any security detail. (Tr. p. 54). None of the text messages introduced by the government referring to other types of weapons were sent to or from Mr. Veintemilla. Nor was there any evidence presented that Mr. Veintemilla participated in any of the planning meetings. He is not alleged to have participated in the actual attack on Moïse. Indeed, the government acknowledged that Mr. Veintemilla has never set foot in Haiti. (Tr. pp. 80-81).

### 3. Proposed Bond Package and Conditions of Release

At the detention hearing, Mr. Veintemilla proposed a bond package consisting of the following conditions:

- A $3,000,000 Bond co-signed by 8 family-members and friends who are willing to secure the Bond with their homes;

- A pre-signed waiver of extradition so that if Mr. Veintemilla were to ever flee, he would be immediately returned to the country;

4

- Home confinement and GPS monitor;

- No access to computers or the internet;

  His wife will act as an officer of the Court and pledge to report any bond violations;

- The Defendant will pledge to not obtain any additional travel documents.[4]

- Any other conditions the Court deems appropriate.

### 4. The Detention Order

Magistrate Louis rejected the bond package tendered at Mr. Veintemilla's bond hearing, ordering detention premised upon both danger to the community and risk of flight. Magistrate Louis cited the severe penalty faced by Mr. Veintemilla if convicted, his foreign ties, the complexity of the conspiracy charged, and the weight of the evidence. Magistrate Louis did not enunciate what present danger she believed Mr. Veintemilla posed to the community. Further, though Magistrate Louis cited Mr. Veintemilla's participation in an elaborate conspiracy and cited his foreign ties as contributing to a risk of flight, she did not state why she believed his history and the proffered bond conditions were insufficient to mitigate any risk of flight.

### 5. Relief Requested

It is respectfully submitted that the findings made by Magistrate Louis were erroneously based solely on the crimes alleged in the Indictment, and not on the facts presented at the hearing, wherein the government failed to meet its burden of proof regarding Mr. Veintemilla's dangerousness or risk of flight. The Order of Detention placed undue weight on the rebuttable presumption of detention implicated by the crimes charged, without considering the other factors enumerated in 18 U.S.C. § 3142. The Order of Detention should accordingly be revoked and Mr.

---

[4] As noted above, Mr. Veintemilla's travel documents are already in the possession of the government and Mr. Veintemilla has not sought to obtain any others.

Veintemilla should be afforded a reasonable bond, as proffered at the Detention Hearing. *United States v. Hurtado*, 779 F.2d 1467, 1471 (11th Cir. 1985).

The bond package tendered by Mr. Veintemilla is designed to mitigate any potential risk to the Community and/or risk of flight and reflects the confidence of those who know him of his intent to address the charges against him and to observe any restrictions placed upon him by the Court. It is respectfully submitted that a reasonable bond, incorporating the conditions tendered, can be fashioned by the Court to reasonably assure Mr. Veintemilla's attendance at trial and the safety of the community.

## MEMORANDUM OF LAW

### A. Jurisdiction

A Motion to Revoke an Order of Detention brought pursuant to 18 U.S.C. § 3145(b) must be heard by the district judge assigned to the case and not by a magistrate judge. See *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988) ("the district court must conduct an independent review to determine whether . . . pretrial detention is necessary."); *United States v. Johnson*, 858 F. Sup.119, 122 (N.D. Ind. 1994) ("It is clear from the working of Section 3145(a) that 'a court having original jurisdiction over the offense' must be interpreted as the district judge assigned to the case.").

### B. Standard of Review

Upon the filing of a Motion to Revoke a Magistrate Judge's Pretrial Detention Order pursuant to 18 U.S.C. § 3145(b), "the district court must conduct an independent review to determine whether the magistrate properly found that pretrial detention is necessary." *King*, at 490; *United States v. Burstyn*, 2005 WL 2297605, at *2 (S.D. Fla. Mar. 18, 2005) ("Review of the magistrate judge's decision is de novo.") (citing *King*, 849 F.2d at 490-91). The reviewing district judge must "undertake an independent review of the case, enter [his/her] own findings in writing, and set for the reasons supporting [his/her] decision." *King*, 849 F.2d at 489. A de novo hearing is not required

so long as the district judge conducts a de novo review of the "factual posture of the case." *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987).

### C. The Bail Reform Act

The Bail Reform Act, 18 U.S.C. 3142 *et seq*., (hereinafter the "Act") "carefully limits the circumstances under which detention may be sought to the **most serious of crimes**." *Salerno,* 481 U.S. at 747, 107 S.Ct. at 2101 (emphasis added). Indeed, pretrial detention is only appropriate in the limited circumstances set forth in 18 U.S.C. § 3142(f). Thus, "only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in favor of the defendant[.]" *United States v. Kaplowitz*, Case No. 14-cr-20323-Altonaga, 2014 WL 2155231 at 4 (S.D. Fla. May 22, 2014). However, the Act "provides that a judicial officer shall order pretrial detention of a defendant if no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Rodriguez,* 897 F. Supp. 1461, 1463 (S.D. Fla. 1995) (citing 18 U.S.C. § 3142(e)).

### 1. *The RebuttablePresumption of Detention*

It is conceded that because an Indictment has been returned against Mr. Veintemilla alleging crimes that are punishable by life imprisonment, the rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance or the safety of the community has been invoked pursuant to 18 U.S.C. § 3142(e)(3)(A). That *rebuttable* presumption, however, is evidence to be considered with all the other evidence in the record, but it does not affect the ultimate burden of proof, which remains with the Government. *United States v. Quartermaine,* 913 F.2d 910, 916 (11th Cir. 1990). This rebuttable presumption merely implicates a Defendant's burden of production, not the burden of persuasion, which remains with the government.

The case law holds that an arrestee has rebutted the presumption as long as there is "*some* evidence" that the arrestee will not flee or endanger the community if released. *United States v.*

7

*Dominguez,* 783 F.2d 702 at 707(7th Cir. 1986).#Alas, "A defendant cannot be detained as dangerous under § 3142(e), even if the presumption is not rebutted, unless a finding is made that no release conditions " *will* reasonably assure . . . the safety of the community . . ." *Id.* (Emphasis added). That finding cannot be based on evidence that he has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future misconduct." *Id.*, at 706-7.

Ultimately, "Any evidence favorable to a defendant that comes within a category listed in § 3142(g) can affect the operation of one or both of the presumptions, including evidence of their marital, family and employment status, ties to and role in the community, clean criminal record and other types of evidence encompassed in § 3142(g)(3). *Id.* at 707 (7th Cir. 1986). *See also, Freedom Denied, How The Culture of Detention Created a Federal Jailing Crisis, (*The University of Chicago Law School. *(*October, 2022)) Thus, regardless of whether the presumption has been rebutted, the judge must weigh all of the factors listed in § 3142(g) to reach the ultimate release or detention decision. The judge must accordingly release an arrestee in a presumption case if the prosecutor has not proven by clear and convincing evidence that there are no conditions that would "reasonably assure" that person's appearance in court and the safety of the community. Throughout the analysis, the judge should never shift the burden of proof to the defense or treat the presumption as a mandate for detention. *Dominguez* at 707 (emphasis added).

It must also be remembered that the policy underlying the Bail Reform Act "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant." *United States v. Price*, 773 F.2d 1526, 1527 (11th Cir. 1985) (*per curiam*). Bearing this in mind, Courts must strive to impose the least restrictive bail conditions necessary to assure the appearance of a defendant at trial and the safety of the public in the interim between arrest and trial. See *United States v. Himler*,797 F.2d 156, 159 (3d Cir.1986) Thus, Congress elected to make bail available even in the most serious of cases. Indeed, there is no criminal allegation for which bail is unavailable.

Other Defendants in the Southern District of Florida have been granted pretrial release who were charged with crimes that carry a possible life sentence and similarly implicated the rebuttable presumption of detention. In these cases, the defendants have demonstrated their trustworthiness to return for trial. Indeed, recently, Magistrate Judge Reinhart granted pretrial release to such a defendant noting that the defendant "has appeared as required many times" for court-ordered diversion programs. *See United States v. Buford*, 2022 WL 1631673 *4. Magistrate Reinhart noted that the facts surrounding the defendant's track record for returning to court despite the potential for a life sentence "mitigate against the inference that he would not appear if released." *See United States v. Buford*, 2022 WL 1631673 *4. He further noted that even though the crimes with which that defendant was charged carried the possibility of a life sentence, "Any risks posed by Mr. Buford can be sufficiently mitigated by conditions of release so his appearance in Court and the safety of the community can be reasonably assured." *Id.* at *3. In the release order, Magistrate Reinhart further noted:

> "even if there is a risk of nonappearance and/or a risk of danger to the community, detention is only warranted if those risks cannot be sufficiently mitigated by conditions of release. And, those risks need not be mitigated completely. A person cannot be detained if there are conditions that would *reasonably assure* their appearance and the safety of the community. The "reasonably assure" standard reflects that Congress recognized there would be circumstances where, despite conditions of release, a defendant would nevertheless fail to appear as required or would endanger the safety of another. This standard, no doubt, is intended to minimize the chance that a person will be wrongfully detained. Given the choice, at the margin, of releasing a dangerous person or detaining a non-dangerous one, Congress chose the former."

*Id*.

### 2. *Burden of Proof*

As stated above, the Government continues to bear the burden of proof, even in cases where the presumption applies. *Quartemaine*, *Id.* Regarding the risk of flight, the Government bears the burden of establishing by a <u>*preponderance of the evidence*</u> that no condition or combination of

9

conditions will *reasonably assure the Defendant's appearance* as required. *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985).

*Clear and convincing evidence* is required to support a finding that no condition or combination of conditions will reasonably assure the *safety of others or the community*. 18 U.S.C. § 3142(f)(2); *See Id*. The relevant inquiry is whether "an arrestee presents an identified and articulable threat to an individual or the community." *United States v. Salerno*, 481 U.S. 739, 751 (1987). A party meets the "clear and convincing" standard only when it "place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable'." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 599 F. Supp. 2d 1307, 1313 (S.D. Fla. 2009) (J. Ryskamp), aff'd in part, vacated in part, 589 F.3d 1233 (Fed. Cir. 2009) (citations omitted).

3. ***Factors to be Considered under the Bail Reform Act***

18 U.S.C. § 3142(g) sets forth the factors to be considered in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, including:

   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
   (2) the weight of the evidence against the person;
   (3) the history and characteristics of the person, including-
      (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
      (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

D. **The Evidence Favors Mr. Veintemilla's Release**

It is respectfully submitted that proper analysis of the factors to be considered under the Bail

Reform Act mitigates in favor of Mr. Veintemilla's admission to bond with conditions.

### i. *Nature of the Offense Charged, Weight of the Evidence and Subject to Lengthy Period of Incarceration if Convicted*

The conspiracy charged in this case is unquestionably serious. However, Mr. Veintemilla's alleged role in the offense was minor compared to that of his co-conspirators and was non-violent, thus not indicative of a danger to the community. Indeed, other courts have recently granted bond to defendants charged with lesser roles in violent offenses that carry possible life imprisonment. Notably, a defendant charged in the DC Capital riot was granted pretrial release when the court determined that his involvement in the alleged crime was lesser than that of his co-defendants. *United States v. Dolan,* 2021 WL 2312860, *4. The *Dolan* court granted pretrial release noting that where a defendant's "personal involvement appears to be less egregious than many others who personally attacked law enforcement officers, personally damaged property, sought to locate and injure or kill members of Congress, or possessed weapons while in the U.S. Capitol … the nature and circumstances of the offenses charged—is neutral as to Defendant's detention or release." *Id*.

Regarding risk of flight, Mr. Veintemilla acknowledges that the potential for life imprisonment resulting from conviction, standing alone, might present an incentive to flee. But if incentive alone can support a pretrial detention order, then no defendant under federal indictment would be entitled to bond. Indeed, "more than evidence of the commission of a serious crime and the fact of a potentially long sentence [are required] to support a finding of risk of flight." *United States v. Friedman*, 837 F.2d 48, 50 (2nd Cir. 1988). It is respectfully suggested that the evidence of citizenship, family ties, cooperation in the government's investigation, his remaining in this country during the course of the government's investigation for over a year and a half, retention of counsel, all established at the detention hearing, illustrate that Mr. Veintemilla poses no risk of flight, and that the government has not satisfied its burdens of proof to the contrary.

### ii. The History and Characteristics of the Defendant

As noted above, Mr. Veintemilla is a widower and the father of three children, one of whom is several disabled, suffering from cerebral palsy, and requiring 24-hour care for her survival. Although Mr. Veintemilla is currently married to his second wife, Ana Fierro ("Ana"), he is the primary caregiver for this child. Mr. Veintemilla, Ana, and his three children lived in their home in Weston, where his family remains. Mr. Veintemilla has shown his tireless devotion to his disabled child's care, and needs to be home to care for her, while arranging for alternate care in the event of conviction. These extreme circumstances mitigate in favor of release and similarly provide an anchor to secure Mr. Veintemilla's appearance at Court.

Prior to the Indictment in the instant case, Mr. Veintemilla had never been charged with a crime, let alone with committing acts of violence. At the detention hearing, the government adduced no evidence whatsoever that for the year and a half that it was investigating the case, Mr. Veintemilla did anything other than cooperate with its investigation. There was no evidence adduced at the hearing that Mr. Veintemilla interfered with the government's investigation, that he attempted to contact or intimidate witnesses, nor that he destroyed or tampered with evidence. In sum, the government adduced no evidence to fulfill its burden of proving that Mr. Veintemilla is a present danger to the community.

In terms of risk of flight, Mr. Veintemilla has demonstrated his intent to face the government's allegations by remaining in the United States, speaking with the government immediately following the assassination, turning over his telephone voluntarily, hiring an attorney, offering to voluntarily surrender, maintaining his assets, and cooperating with law enforcement when they came to search his home and later, to arrest him. Nothing presented by the government demonstrated any intent to flee the Court's jurisdiction or avoid facing these charges.

### iii. Physical Condition

Federal Courts have recognized the obvious reality that a defendant's poor physical health

**often means they pose a markedly lower risk of flight**. *United States v. Wang*, 2013 WL 6843003, at *3 (D. Kan. Dec. 27, 2013) (recognizing there was "some risk of flight by Defendant due to [an] ICE detainer," but holding the risk was "outweighed by, *inter alia* "his health issues[.]"); *United States v. Lopez-De La Cruz*, 431 F. Supp. 2d 200, 203 (D.P.R. 2006) (holding that pretrial release was warranted due, in part, to Defendant's life "health condition, and negative drug use[.]"). Mr. Veintemilla is 54 years old, diabetic, and suffers from a high blood pressure.

Moreover, Federal correctional institutions have proven to be the ideal environment for rapid transmission of COVID-19. These serious medical issues place Mr. Veintemilla [5] at an extremely high risk of contracting a severe case of COVID-19. *See* "Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Providers," Centers for Disease Control.[6] **This factor heavily weighs in favor of pretrial release.** [7] *Hassanshahi,* 989 F. Supp. 2d 110, 116 (D.D.C. November 5, 2013)

       iv.      ***Length of Residence in the Community & Community Ties***

As noted above, Mr. Veintemilla has strong ties to the community. He is a United States Citizen, who has lived in this Country since emigrating from Ecuador as a young child. *See Giordano*, 370 F. Supp. at 1267. *(*recognizing American citizenship as a factor weighing against a serious risk of flight). The Detention Order notes Mr. Veintemilla's international ties as a factor weighing in favor of detention. However, the Government failed to adduce any evidence that Mr. Veintemilla has any foreign investments, bank accounts or property. Further, Mr. Veintemilla's wife and children, including his dependent daughter, reside here, along with most of his extended family. Therefore, this Court should find this factor weighs in favor of pretrial release**.**

---

[6] Available at: https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html

[7] *See*, Memorandum from the Office of the Attorney General to the BOP dated April 3, 2020, urging home confinement for eligible, vulnerable inmates under the CARES-Act. https://www.justice.gov/file/1266661/download

      *v.*      **Lack of Financial Resources**

Simply put. Mr. Veintemilla does not have the financial resources with which to flee. Due to the publicity surrounding his alleged involvement in this case, his reputation in the business community has been irreparably tarnished, and his earnings have been obliterated. Mr. Veintemilla's home is in foreclosure proceedings, and his family is subsisting with the assistance of family members and friends. Mr. Veintemilla has no present financial ability to leave the Country.

    **E. The Government has Failed to Establish that No Combination of Conditions will Reasonably Assure Mr. Veintemilla's Appearance and the Safety of the Community and Mr. Veintemilla has Rebutted the Presumption of Detention.**

The Government failed to establish at the Detention hearing that Mr. Veintemilla presents either a danger to the community or a risk of flight, and Mr. Veintemilla produced overwhelming evidence to rebut the presumption raised by the charges against him. He has offered to be subject to home detention with location monitoring. His wife has offered to act as an officer of the Court pledged to report any violations of the Court's Orders. Eight (8) family members and friends are willing to risk their financial security on Mr. Veintemilla's integrity to the Court, and Mr. Veintemilla is willing to pre-sign a waiver of extradition. The Court can impose limitations on Mr. Veintemilla's internet and phone access and require him to remain in home confinement. Under these conditions, he would have neither reason nor means to flee, and the Court would be reasonably assured that he is no danger to the community. Thus, it is respectfully requested that the Court grant Mr. Veintemilla bond, as justified pursuant to the Bail Reform Act.

    **F. Mr. Veintemilla's Detention Violates His Fifth Amendment Due Process Rights and His Sixth Amendment Right to the Effective Assistance of Counsel in Light of the Inability to Adequately Prepare His Case**

Discovery in the instant case is vast and complicated. It is in a multitude of languages, implicates international and national security interests and is formatted across a broad spectrum of data types. Much of the discovery will not be able to be reviewed independently by Mr. Veintemilla outside of the presence of counsel due to its inclusion of sensitive national security information.

14

Without Mr. Veintemilla's active participation in preparation of his defense, the case cannot be adequately defended. It would be exceedingly difficult to bring to Mr. Veintemilla all the documentary and other materials needed to adequately prepare his defense while he is incarcerated. The local detention centers make it exceedingly difficult to review discovery and limit defendants' access to computers and time sufficient to engage in adequate, in-depth review of materials.

The Supreme Court in *Stack v. Boyle*, 342 U.S. 1 (1951) recognized that due process and effective assistance of counsel are primary concern implicated by the traditional right to freedom before conviction, in that it permits the unhampered preparation of a defense and serves to prevent the infliction of punishment prior to conviction. 342 U.S. at 3, *citing Hudson v. Parker*, 156 U.S. 277, 285 (1895). It is respectfully submitted that Mr. Veintemilla's confinement would unduly delay and interfere with the Sixth Amendment right to prepare and present his defense, as well as his right to counsel. Accordingly, it is respectfully submitted that Mr. Veintemilla's Fifth and Sixth Amendment rights should also be considered in favor of granting bail.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, Defendant Veintemilla respectfully requests that the Court grant the forgoing Motion to Revoke Pretrial Detention Order, imposing those conditions or combination of conditions which will reasonably assure Defendant's appearance at all future Court proceedings and the physical safety of the community including (a) A Bond for $3,000,000 cosigned by 8 family-members and friends who are willing to secure the note with their homes; (B) A pre-signed waiver of extradition so that if Mr. Veintemilla were to ever flee, he would be immediately returned to the country; (C) Home confinement and GPS monitor; (D) No access to computers or the internet; and any other conditions the Court deems appropriate. Mr. Veintemilla respectfully requests a hearing regarding any areas of inquiry that the Court should wish to address.

Dated: March 14, 2023

Respectfully submitted,

**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**

Tama Beth Kudman, Esq.
7108 Fairway Drive, Suite 130
Palm Beach Gardens, Florida 33418
Tel: (561) 472-0811; Facsimile: (561) 828-0210

By: /s/ Tama Kudman
Florida Bar No. 637432
tbk@pietragallo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served via email transmission to all counsel of record on March 14, 2023.

By: /s/ Tama Kudman