UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 22-20104-CR-BECERRA(s)(s)(s)(s)(s)

UNITED STATES OF AMERICA

vs.

Arcangel Pretel Ortiz, et. al.,

          Defendants.
_____/

## UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO TAKE JUDICIAL NOTICE AND CROSS-MOTION TO PRECLUDE

At docket 776, defendant Walter Veintemilla, together with codefendants Antonio Intriago, James Solages, Christian Sanon, and Arcangel Pretel Ortiz, move the Court to take judicial notice of "the Haitian indictment[1] related to the killing of President Moise[]."  Docket 776, p. 1.  The defendants appear to contend that, because they were purportedly not charged in the Haitian indictment, the Court should take judicial notice pursuant to Fed. R. Evid. 201(c)(2), apparently so the defendants can argue to the jury that this shows they are not guilty of the crimes charged in the United States' indictment.  Similarly, the defendants seem to claim that the presence of additional perpetrators in the Haitian indictment supports an inference that they were not involved in the President's assassination.  The defendants' arguments ignore the plain language of the Haitian indictment and well-settled law regarding the inadmissibility of such documents, which applies with greater force in the case of foreign documents not governed by United States due process standards.  Moreover, the defendants ignore the provisions of Fed. R. Evid 201(b), as well as case law that interprets these provisions, which preclude the Court from taking judicial notice

---

[1]     To be clear, there is no grand jury system in Haiti, and the document attached as Exhibit A to the defendant's motion is not technically an "indictment," but rather a "referral order."  However, for the sake of consistency, it will be referred to as the "Haitian indictment" herein.

of the indictment for the purposes sought by the defendants. Accordingly, the Court should deny their motion.

Relatedly, given that the defendants have attached significance to the Haitian indictment, the United States moves to preclude the defendants from questioning witnesses about the *existence* of the Haitian indictment at trial. The Haitian indictment is hearsay, and while it may be appropriate to cross-examine certain witnesses based upon the facts underlying the Haitian charges consistent with the Federal Rules of Evidence, reference to the Haitian indictment itself is inappropriate and inadmissible.

## BACKGROUND

On July 7, 2021, President Jovenel Moise in Haiti was assassinated in his home, while at the same time First Lady Martine Moise was shot several times and left for dead. In the immediate aftermath, Haitian law enforcement arrested dozens and dozens of people suspected of being involved with the assassination. Days later, when it became clear that United States persons were involved in the assassination, investigators with the Federal Bureau of Investigation ("FBI") and the Department of Homeland Security ("DHS") went to Haiti to conduct their own investigation. The high-profile nature of the crime generated significant speculation in Haiti and in the media about the perpetrators and their motivations.

Some co-conspirators escaped Haiti but were later arrested in the Dominican Republic (Rodolphe Jaar) and Jamaica (Joseph Joel John and Mario Antonio Palacios). The United States charged and indicted these three individuals with (1) conspiring to kill and kidnap a person outside of the United States, resulting in death, in violation of 18 U.S.C. § 956(a)(1); (2) conspiring to provide material support and resources to carry out a violation of 18 U.S.C. § 956(a)(1), resulting

in death, in violation of 18 U.S.C. § 2339A(a); and (3) providing such material support, resulting in death, in violation of 18 U.S.C. § 2339A(a). Docket 70 (filed October 18, 2022).

Among those immediately arrested by Haitian authorities were American citizens James Solages and Christian Sanon, as well as Colombian German Rivera Garcia. As of February 2023, these individuals remained uncharged in Haitian prison while Haitian authorities continued to investigate the matter. At around the same time, sufficient evidence had been collected against several United States residents, including current defendants Arcangel Pretel Ortiz, Antonio Intriago, and Walter Veintemilla, implicating them in the assassination, and other crimes. On February 14, 2023, a Third Superseding Indictment was filed charging all the above defendants with crimes related to their participation in the assassination. Docket 107.[2]

Meanwhile, the Haitian investigation encountered a series of delays because of the high turnover of investigative judges assigned to the matter, "with some resigning out of fear for their lives." AP News online, "A widow and 2 powerful officials indicted: Takeaways from the probe into Haiti president's slaying," February 24, 2024.[3] On or about January 25, 2024, the Haitian indictment was released, in which Haitian authorities charged approximately 50 people in a 122-page document summarizing the evidence they had collected. While it is not entirely clear who was charged and who was not, as explained below, this document appears to exclude the referral of charges against certain of the above-captioned defendants. Moreover, Haitian authorities referred former First Lady Martine Moise for prosecution on charges of conspiracy to murder her

---

[2]  A Fourth Superseding Indictment was filed on June 20, 2023, adding additional related charges [Docket 330], and the current Fifth Superseding Indictment was returned on February 13, 2024, including Sanon as a defendant in the first three charges pertaining to the assassination. Docket 552. Defendants Jaar, John, Palacios, Vincent, and Bergmann have since pled guilty and been sentenced.
[3]  Found at https://apnews.com/article/haiti-widow-accused-prime-minister-police-chief-f77603e3aefde2512e640b9f896b11b2

3

husband. The defendants now ask the Court to take judicial notice of the Haitian indictment pursuant to Federal Rule of Evidence 201, ascribing relevance to who was purportedly named and who was not named in the document.

## ARGUMENT

I. THE HAITIAN INDICTMENT SPECIFICALLY NOTES THAT IT HAS PURPOSEFULLY EXCLUDED CONSIDERATION OF CHARGES AGAINST THE DEFENDANTS BASED UPON INTERNATIONAL LAW PRINCIPLES.

The defendants attach significance to the fact that they purportedly are not charged in the Haitian indictment, believing that the United States factfinder should consider their absence an indication of their innocence. Careful reading of the Haitian indictment demonstrates the opposite conclusion. In fact, the Haitian indictment specifies that all of the above-captioned defendants, with the curious omission of Sanon, were specifically excluded from charges in the Haitian indictment because of the United States indictment:

> Whereas defendants John Joël JOSEPH, James SOLAGE[sic], Joseph VINCENT, Rodolph JAAR [sic], Angel Pretel ORTIZ, Mario Antonia [sic] PALACIOS PALACIOS, Walter VEINTEMILLA, Antonio ENTRIAGO [sic], German Alejandro Rivera GRACIA [sic] were during the course of the proceeding extradited and convicted [sic] by the American Justice for their participation in the assassination of President Jovenel MOISE;
>
> Whereas in virtue of the enshrined principle in article 14.7 of the International Treaty regarding civil and political rights of article 8.4 of the U.S. Convention regarding Human Rights, criminal prosecution may not proceed in a participating State parties to these legal instruments against a person who has already been tried for the same facts in another State;
>
> . . . .
>
> On these grounds we hereby declare the criminal procedures terminated against defendants: John Joël JOSEPH, James SOLAGE [sic], Joseph VINCENT, Roodolph JAAR [sic], Angel Pretel ORTIZ, Mario Antonia [sic] PALACIOS PALACIOS, Walter VEINTEMILLA, Antonio ENTRIAGO [sic], German Alejandro Rivera GRACIA [sic].

4

Docket 776-1, pp. 259-260 (emphasis added).[4]  Thus, the fact that the defendants were not charged in the Haitian indictment has nothing whatsoever to do with any assessment of the defendants' culpability, but rather is based upon the Haitian authorities' reading of international law, and perhaps their mistaken assumption that the defendants have already been convicted.

II.     EVIDENCE OF THE EXISTENCE OF THE HAITIAN INDICTMENT WOULD BE INADMISSIBLE EVEN IF IT WAS AN INDICTMENT RETURNED IN THE UNITED STATES.

Apart from the accusatory instrument originating from a foreign country that lacks the same procedural safeguards found in the United States, such a document or evidence that such a document existed would be inadmissible for the defendants' intended purposes even if it was an indictment returned by a United States' grand jury.  Indeed, one of the very first things a jury is told at a trial is that an indictment is not evidence: "First of all, a grand jury charge is not evidence. The indictment against the defendant brought by the government is only an accusation, nothing more. It is not proof of guilt or anything else."  Pattern Crim. Jury Instr. 11th Cir. PI, P1 (2024). Yet, that is exactly how the defendants intend to use the accusatory instrument, transparently noting that they seek to highlight "who is charged and (not charged)." Docket 776, p. 3.  In other words, because the defendants purportedly were not named in the Haitian indictment, defendants wish to argue there has been some finding that others are responsible (notwithstanding the plain language of the Haitian indictment as noted above).

Even assuming, for the sake of argument, that the Haitian indictment was an indictment charged in the United States, the absence of the defendants from such an indictment would be irrelevant and inadmissible.  Courts do not admit indictments into evidence in trials or proceedings

---

[4] However, other paragraphs of the indictment appear to contradict this, to include referring charges against Rivera-Garcia, Joseph Vincent, James Solages, as well as Christian Sanon.  Docket 776-1, p. 334.

5

because an indictment "is not evidence of any kind against a defendant" and "does not create any presumption or permit any inference of guilt." *United States v. Garcia*, 562 F.2d 411, 416 (7th Cir.1977); see also *Kentucky v. Long*, 837 F.2d 727, 740 n. 5 (6th Cir.1988). The Third Circuit, in the context of a motion to quash a subpoena, discounted an argument like the one made here, that the court should ascribe probative value to the fact that a state grand jury failed to indict the defendant and his associate:

> Since the county grand jury can only investigate crimes against the Commonwealth of Pennsylvania, its failure to indict Stout or anyone else related to him is patently irrelevant to the federal grand jury's investigation of whether a violation of a federal statute has occurred.

*In re Grand Jury Matter*, 802 F.2d 96, 101 (3d Cir. 1986), citing *In re Grand Jury Proceedings* (U.S. Steel), 525 F.2d 151 (3d Cir. 1975) (vacating stay of federal grand jury proceedings pending completion of state proceedings).

Indeed, courts routinely exclude evidence of even a state court *acquittal* in related federal trials. In *United States v. Kerley*, the defendant, an officer in the sheriff's department repeatedly struck an individual held in custody. 643 F.2d 299 (5th Cir. 1981). A state jury acquitted the defendant on a battery charge, and the defendant attempted to introduce this acquittal in a federal trial arising from the same incident. *Id.* The Fifth Circuit rejected this attempt, stating, "[e]vidence of a prior acquittal is not relevant because it does not prove innocence but rather merely indicates that the prior prosecution failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime. *Id.* at 300-301. Not only are judgments of acquittal—like indictments—not relevant, but they are hearsay for which no exceptions exist to allow their admission."[5] *United States v. Irvin*, 787 F.2d 1506, 1517 (11th Cir. 1986).

---

[5] Contrast this with a judgment of conviction, for which there is a specific hearsay exception. Fed. R. Evid. 803(22).

An example further emphasizes this point: If the roles were reversed and the Haitian indictment explicitly named the defendants, and the United States attempted to introduce this fact in its case-in-chief for the proposition that they were guilty, the defendants would strenuously object. And such objection would be justified, as any attempt to introduce this irrelevant and unreliable hearsay would be clearly inadmissible. It is not less so simply because the defendants are the ones who want to introduce it. This rationale applies with even greater force in the case of allegations levied in an accusatory instrument filed by a foreign government that is not bound by the same standards of due process that govern United States' proceedings, as evidenced by some of the conclusions set forth in the Haitian indictment, set forth in section IV, below.

### III. IT IS IMPERMISSIBLE TO TAKE JUDICIAL NOTICE OF THE HAITIAN INDICTMENT FOR THE DEFENDANTS' INTENDED PURPOSES.

The defendants are requesting the Court take judicial notice of the Haitian indictment for proving the truth of the matter asserted, a purpose prohibited by courts interpreting Fed. R. Evid. 201. Rule 201 creates a vehicle for the judicial notice of adjudicative facts. The Advisory Committee Notes to the Rule define adjudicative facts as "the facts of the particular case." Fed. R. Evid. 201, Advisory Committee Note, subdivision (a). Rule 201(b) itself explains that a court may take judicial notice of an adjudicative fact only when it is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

First, the Haitian indictment is not a fact "generally known within the territorial jurisdiction of the trial court." Indeed, as the Advisory Committee Note makes clear, there is a separate procedure for raising issues of foreign law, which is governed by Fed. R. Crim. P. 26.1. This makes sense, as often foreign jurisdictions have different practices and standards of proof. Nor is the

7

Haitian indictment a "source whose accuracy cannot reasonably be questioned," as the defendants would surely agree based upon the fact that it states that they were already convicted in the United States.

Regardless, even if both of those requirements were satisfied, the obvious reason the defendants seek to introduce the Haitian indictment is for the "truth of the matter asserted," which is prohibited. While it is true a court may consider documents properly subject to judicial notice, including the existence of court dockets and filings in related proceedings, such as an Indictment, a court cannot take judicial notice of those documents for the truth of any matter asserted therein. This usually arises in the context of civil cases. *See CB Equities, LLC v. Am. Brokers Conduit Corp.*, No. 12-CV-05449-DMR, 2016 WL 4364320, at *3, n.2 (N.D. Cal. Aug. 16, 2016) (*citing Porter v. Ollison*, 620 F.3d 952, 954–55 (9th Cir. 2010)) (granting request for judicial notice of indictment only as to evidence of what crime was charged and not for the truth of any matter asserted therein); *Princeton Strategic Inv. Fund, LLC v. United States*, No. C 04-04310 JW, 2011 WL 6176221, at *6, n.31 (N.D. Cal. Dec. 7, 2011) ("The Court considers the Indictment only as to evidence of the crime [that was] charged, and not for the truth of any matter asserted therein.").

The case of *United States v. Garland*, 991 F.2d 328 (6th Cir. 1993), cited by the defendants in support of their request, forcefully illustrates this distinction in admitting a Ghanian judgment by taking judicial notice of it. However, the defendants misconstrue *Garland*. There, the defendant was convicted of one count of interstate fraud arising out of a fraudulent cocoa bean transaction. *Id.* at 329. Subsequently, the National Public Tribunal of Ghana convicted two Ghanaians of defrauding the same defendant by making false representations concerning the same cocoa bean transaction. *Id.* at 332. The court took judicial notice of the "existence of the judgment and the fact that the Ghana criminal court has made detailed findings of fact on issues relevant to

8

the case at hand." *Id.* Thus, in *Garland*, the foreign conviction itself, beyond the truth of the findings, substantiated Garland's lack of intent to defraud. But the *Garland* court specifically noted that it did "not judicially notice the truth of the statements contained in the Ghana judgment because some of these facts may remain in dispute." *Id.*

In contrast, the Haitian indictment is a far cry from a judgment, but rather an accusation that is the product of an investigation of a justice system that is governed by different rules of evidence and due process than the United States. As noted, grand juries do not exist in Haiti, which is a civil law country that operates under an inquisitorial legal system. Nevertheless, the defendants claim "[w]e are not asking the Court to take judicial notice of the allegations contained in the Haitian indictment, just the fact of the Indictment and who is charged (and not charged)." Docket 776, p. 3. But the existence of a Haitian indictment itself is not important to the defendants. Rather, the defendants want to reference the names of people who were indicted so they can argue the *implication* of the indictment: that others are guilty but they are not. This is an impermissible inference from the Haitian indictment, which legally establishes nothing and exculpates none of the defendants.

    IV.    **THE COURT SHOULD PRECLUDE ATTEMPTS TO ELICIT THE EXISTENCE OF THE HAITIAN INDICTMENT FROM WITNESSES.**

The defendants apparently seek to introduce the fact that the Haitian Indictment refers former First lady Martine Moise for prosecution, hyperbolically beginning the recitation of evidence against her, "[w]hereas as the old saying goes, "[y]ou can only be sold outside if it's an inside job . . . it seems to fit in the case of President Jovenel Moise's assassination." Docket 776-1, p. 277. The Haitian indictment then chronicles the "evidence" against her, which includes: (1) her removing objects from the National Palace two days before the assassination [*Id.*, p. 278]; (2) a witness statement that claims she wanted someone else to call a cabinet meeting two days after

the assassination so she could become president [*Id.*, p. 279]; (3) the implausibility of her hiding under a bed that "not even a giant rat" could have gone to hide under [*Id.*], (4) some disparity as to whether she was shot twelve times or eight, and whether she was with her children or in the bedroom at various times during the crime [*Id.*]; and (5) a statement from the purported mastermind of the assassination (who was discredited earlier in the same document) [*Id.*, p. 272 (Joseph Badio's story rejected as "a way out to trial to clear his conscience and cover his tracks")], to the effect that Martine Moise was collaborating with others to get rid of President Moise to become elected President of Haiti. *Id.*, p. 280. This, even though elsewhere the Haitian indictment calls her the "seriously injured wife of the President lying on the floor not lucid" after being shot multiple times. *Id.*, p. 179. Clearly, the standard of proof required for a Haitian indictment varies significantly from that of a United States indictment.[6]

Standards of proof notwithstanding, generally an indictment is not admissible to attack the credibility of a witness because an "[a]rrest without more does not . . . impeach the integrity or impair the credibility of a witness" as "[i]t happens to the innocent as well as the guilty." *Michelson v. United States*, 335 U.S. 469, 482 (1948); *United States v. Vigliatura*, 878 F.2d 1346, 1351 (11th Cir. 1989) ("The mere existence of an arrest is not admissible."); *United States v. Truslow*, 530 F.2d 257, 265 (4th Cir. 1975) ("evidence of other offenses and charges and acquittals

---

[6] Other defendants, including political figures, were "indicted" for conspiracy to murder charges based upon equivocal evidence. Docket 776-1, p. 282 (citing Ardouin Zepherin's "disdainful, apathetic attitude" in which he "missed several phone calls [from the President] without even thinking of returning one of the calls" as a reason for charging him); p. 276-77 (citing former Prime Minister Claude Joseph's message to the nation that "all was under control" while at the same time failing to go to the president's premises for fear for his personal security, as "sufficient and corroborating evidence of complicity" to charge him). Seemingly all of the presidential guards were charged because, among other things, "the protected person cannot be killed without the person in charge of providing the security be able [sic] to justify concrete steps taken, beyond all reasonable doubt, to neutralize the assassins." *Id.*, p. 300-345.

are not [admissible as going to the credibility of a witness] unless otherwise admissible."). Accordingly, there is no basis to allow the defendants to question witnesses about the existence of the Haitian indictment.

Of course, as to the facts recited in the Haitian indictment, there may well be bases to inquire consistent with Federal Rule of Evidence 608(b) (specific instances of conduct may be inquired into if they are probative of the character for truthfulness or untruthfulness) or 404(b)(2) (evidence of other acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identify, absence of mistake, or lack of accident."). However, such instances must be noticed by the defendants, who "must demonstrate that it is not offered to prove the character of a person in order to show action in conformity therewith." *United States v. Cohen*, 888 F.2d 770, 776 (11th Cir. 1989). Even in such cases, "the court must balance the probative value against the possibility of unfair prejudice." *Id*; *United States v. Novaton*, 271 F.3d 968, 1007 (11th Cir. 2001) (no error in limiting defense cross-examination of a DEA agent regarding "unproven allegations that [the agent] had stolen cocaine," which "had the obvious potential to cause serious and unfair prejudice to the government"). *See also United States v. Diaz*, 26 F.3d 1533, 1540 (11th Cir. 1994) (holding no error in precluding defendants from cross-examining prosecution witness regarding pending state charges on theory that pending state charges would bias his testimony; there was no indication that the federal prosecutors could grant leniency in a state case); *United States v. Thorn*, 917 F.2d 170, 176 (5th Cir. 1990) (barring defendant from exploring government witness's state law indictment did not violate Sixth Amendment as there was no evidence the government could influence the state court proceedings, and the existence of a pending state court indictment on charges totally unrelated to

11

the testimony offered in the case did not give the witness a substantial reason to cooperate with the government).[7]

In summary, an attempt to use the existence of the Haitian indictment at trial constitutes improper character evidence that runs afoul of Fed. R. Evid. 404(b). As to whether the purported factual underpinnings of the Haitian indictment are admissible for other purposes, the defendants should separately provide notice so the Court can carefully balance the probative value of such evidence against the danger of confusion of the issues and misleading the jury, particularly in light of the equivocal factual and legal conclusions reached by the Haitian indictment.

## CONCLUSION

The Haitian indictment is unclear as to who is charged, who is not, and why it excluded consideration of certain defendants. Nevertheless, it is inadmissible because it is irrelevant, constitutes hearsay, and is the product of a foreign judicial system that lacks the procedural guarantees found in the United States. Moreover, Fed. R. Evid. 201 does not provide a basis for admission because the indictment fails to satisfy the requirements for taking judicial notice of such documents, and it cannot be admitted for its truth, which is the transparent purpose behind the defendants' request. Finally, the Court should preclude all reference to the Haitian indictment at trial, as it constitutes irrelevant hearsay lacking guarantees of trustworthiness.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

---

[7] In different circumstances, defendants have opposed introduction of evidence of other charges against themselves and argued that such evidence is unfairly prejudicial; courts generally agree, absent specific theories of admissibility other than character. *See United States v. Cross*, 655 F.2d 50, 50 (5th Cir. 1981) ("the district court's error in admitting the repeated references to 'other federal charges' necessitates reversal of the conviction on Count II").

By: /s/ *Andrea Goldbarg*
/s/ *Monica K. Castro*
Assistant United States Attorneys
Court ID No. A5502556
Court ID No. A5502776
U.S. Attorney's Office
Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132-2111
Telephone: (305) 961-9000
Email: Andrea.Goldbarg@usdoj.gov
Email: Monica.Castro@usdoj.gov

MATTHEW G. OLSEN
ASSISTANT ATTORNEY GENERAL
/s/ *Frank V. Russo*
/s/ *Andrew Briggs*
Trial Attorneys
Court ID No. A5502917
Court ID No. A5503251
National Security Division
Department of Justice
950 Pennsylvania Avenue
Washington, DC  20530
Telephone: (202) 307-2898
Email: Frank.Russo2@usdoj.gov
   Andrew.Briggs2@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 14, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: */s/ Frank V. Russo*
Frank V. Russo
Trial Attorney